UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER FALLON,<br>            Plaintiff,<br>   v.<br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security<br>            Defendant. | Case No. 18-cv-01817<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 15, 19 |

Plaintiff Christopher Fallon seeks Social Security benefits for physical impairments, specifically his knees after a total replacement surgery on each. Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Defendant") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's motions for summary judgment.[1] (Dkt. Nos. 15 & 19.) Because the Administrative Law Judge ("ALJ") erred in finding that Plaintiff's residual functional capacity ("RFC") allowed him to perform past relevant work, the Court GRANTS IN PART Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

## PROCEDURAL HISTORY

On May 28, 2014, Plaintiff filed his claim for Social Security Disability benefits, alleging that he had been disabled since February 20, 2014 due to surgeries on both knees. (AR 127.) After his request was denied on September 16, 2014, (AR 47-56), Plaintiff filed a timely request for a hearing before an ALJ. (AR 75.) On November 28, 2016, Plaintiff had a hearing before ALJ Robert Freedman. (AR 316.) Plaintiff, medical expert Dr. Darius Ghazi, M.D., and vocational expert Ronald Morrell testified. (*Id.*) The ALJ filed a written decision denying Plaintiff's application for benefits on January 11, 2017, finding that Plaintiff could still perform his past relevant work as an office clerk. (AR 26-36.) After timely appeal, the Appeals Council rejected

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 8.)

Plaintiff's request for review on February 8, 2018. (AR 5-8.) This complaint was filed on March 23, 2018. (Dkt. No. 1.)

## ADMINISTRATIVE RECORD

### I. Medical and Employment Evidence

#### a. History

Plaintiff was born on May 25, 1956, is 5'9" tall, and weighs 232 pounds. (AR 183.) Plaintiff has undergone two operations, one for each of his knees, which form the basis for his disability claim. On December 16, 2010, Plaintiff underwent a right total knee arthroplasty to treat end stage osteoarthritis. (AR 303.) Dr. Eric Test, M.D., performed the surgery without complications. (AR 304.) On February 3, 2011, Plaintiff underwent a similar surgery, a left total knee arthroplasty to treat end stage osteoarthritis with genu varum. (AR 305.) Dr. Test performed the surgery without complications. (AR 306.)

#### b. Evaluations

Plaintiff was evaluated by three doctors, and a medical expert reviewed Plaintiff's records for the ALJ hearing.

##### i. Dr. Eric Test, M.D.

Dr. Eric Test, M.D., was the treating surgeon for both of Plaintiff's knee replacement surgeries. (AR 303-306.) After the two operations, he evaluated Plaintiff on two separate occasions: March 13, 2013 and June 12, 2013. At Plaintiff's first appointment, Dr. Test noted that Plaintiff reported persistent pain in both knees "chronically since his surgery." (AR 255.) With regard to ambulation specifically, Dr. Test noted that Plaintiff is able to walk for up to one mile per day and can walk without a cane or walker. (*Id.*) After Plaintiff's second appointment, Dr. Test certified that Plaintiff "may return to work with…restrictions" including no lifting weights greater than 50 pounds, no walking or standing for more than four hours per day, no ladder-climbing, and no squatting or kneeling. (AR 254.) Dr. Test noted that Plaintiff reported "persistent chronic anterior bilateral knee pain, none activity related." (AR 259.) Plaintiff's 2009 medical records with Dr. Test list obesity as a health problem. (AR 257, 261.)

### ii. Dr. Lara Saramacha, M.D.

Dr. Lara Saramacha, M.D., conducted a physical exam of Plaintiff on August 18, 2014 at the request of the agency and described him as "a 58-year-old, obese, stooped-postured man." (AR 282.) Like Dr. Test, Dr. Saramacha noted that Plaintiff can walk for a mile but cannot lift weights above 50 pounds. (AR 282-283; AR 283.) Dr. Saramacha added that Plaintiff could "stand for an hour postoperatively" such that he is "independent with dressing, bathing, grooming, toileting, feeding, household chores and errands," and that in spite of his stooped posture, he did not have a limp. (*Id.*) Dr. Saramacha noted that Plaintiff reported a "sensation of burning pain in the region of the quadriceps tendons bilaterally." (*Id.*) In assessing his functional capability, she wrote that Plaintiff "should not be squatting to lift from floor to table level for greater than 25 pounds. He may perform occasional bending and rare stooping or crouching." (AR 284; *see also* AR 287 (providing more detailed limitations on lifting ability).)

### iii. Dr. Michael Butcher, M.D.

Dr. Michael Butcher, M.D., saw Plaintiff on September 22, 2016 for a new patient evaluation. (AR 295.) After a "prolonged visit," Dr. Butcher recommended that Plaintiff "return to work [as an] Outreach Driver." (AR 300.)

### iv. Medical Expert Dr. Darius Ghazi, M.D.

Dr. Darius Ghazi, M.D., testified as a medical expert at the ALJ hearing. Based on his review of the medical records, he testified that Plaintiff had "optimal results from surgery" and demonstrated "optimum motion and relief of pain and correction of deformity." (AR 325, 326.) However, Dr. Ghazi did not conclusively state that in his medical opinion Plaintiff is able to effectively ambulate under the definition used in the relevant listings. (AR 327-328 ("He should, you know, like I said with a normal knee you can do lots of things that you cannot do with artificial joints and little pain and mobility. That's as far as we can go but he cannot do everything else that he could do with a general knee")); *see also* 20 C.F.R. § 404(p), listing 1.03.

### c. Employment History

Plaintiff completed two years of college education, and he attended machine shop school in 1996. (AR 184.) From March 1997 to May 2012, Plaintiff worked in the warehouses of office

supply companies, spending the last twelve of those years at Staples as an inventory clerk. (AR 184.) According to his responses in the Work History Report, at Staples, Plaintiff walked or stood up on the job for over six hours and climbed ladders and kneeled to count products. (AR 204.) He was paid $18.80 per hour and worked 40 hours per week. (*Id.*) Plaintiff then worked from October 2013 to February 2014 as an office clerk at Hertz. (AR 184.) According to his responses in the Work History Report, at Hertz, Plaintiff verified inventory and receipts, recorded sales, and sent completed documents by computer. (AR 203.) He also carried tiles weighing up to 15 pounds from a safe to his office "about 50 feet away." (*Id.*) He was paid $13.00 per hour and worked 40 hours per week. (*Id.*)

## II. Social Security Administrative Proceedings

### a. The ALJ Hearing

ALJ Robert Freedman heard testimony from Plaintiff, a medical expert (Dr. Ghazi, whose opinions are discussed above), and a vocational expert on November 28, 2016. (AR 316.) Plaintiff's and the vocational expert's testimony are described in turn.

#### i. Plaintiff's Testimony

When asked about his employment, Plaintiff testified that he is currently a paratransit driver, working "approximately seven to maybe eight" hours per day and between two and four days per week. (AR 329-330.) Plaintiff explained that in this job, his colleagues make accommodations for him such as climbing stairs to meet his clients. (*Id.*) Plaintiff described the end of each day as "debilitating" and "pretty painful" after working his hours. (*Id.*)

In addition to his current work, Plaintiff testified that he worked for a "rental car company" (Hertz) doing "inventory of the cars in the lot…paperwork mostly…" and "computer work." (AR 332-333.) Plaintiff explained that he was unable to fulfill computer tasks on time and made mistakes in his job, which were the basis for his termination along with his physical limitations. (AR 333; *see also* AR 345 ("…They replaced me with a young gal…they're very adaptive to computers…[in addition, in] warehouse work, light duty doesn't exist anymore…I was interested in [those jobs] but then they said, well, these TVs weigh 75 pounds [and I had to say no].") Plaintiff then testified that he worked at Staples in an "inventory control warehouse" position

4

"load[ing] and unload[ing] trucks…" using a forklift and "track[ing] inventory." (AR 334-336.) In this position, colleagues also made accommodations for Plaintiff such as doing heavy lifting while Plaintiff managed lighter and "small stuff." (AR 338.)

When asked about his medical impairment, Plaintiff explained that as a result of his two surgeries, his "hip is very, very sore and [his] knee…developed soreness…[and] really burns and hurts." (AR 339-340.) Plaintiff elaborated that doctors have suggested a Cortisone shot for the pain but that he cannot afford it. (AR 340.)

When asked about his daily routine, Plaintiff explained that he lives in a mobile home and can cook with the aid of a stool. (AR 343.) Plaintiff further explained that his wife must do the other chores such as mopping floors and cleaning the yard. (*Id.*) As to his physical capabilities, Plaintiff described his walking ability as "maybe a quarter of a mile" or "ten minutes or so" and his lifting ability as "up to 40 pounds." (*Id.*)

When asked about receipt of other benefits, Plaintiff testified that he received state disability benefits after leaving Staples when his physical therapy was unsuccessful and that he received unemployment benefits because he could not "find anything…within my customary field." (AR 348-349.)

### ii. Vocational Expert's Testimony

Ronald Morrell, an independent vocational expert, testified that Plaintiff's prior job at Hertz was classified by the Department of Transportation (DOT) as "[office] clerk" and that Plaintiff's prior job at Staples was classified as "inventory clerk." (AR 350-351.) Mr. Morrell explained that the "office clerk" position at Hertz as performed by Plaintiff involved "lifting and carrying files about 10 to 15 pounds," and that "per the DOT it is light [work]." (AR 351.) When asked about a hypothetical involving a person of Plaintiff's stated impairments—light exertional level with no more than occasional use of stairs; no use of ladders, ropes or scaffolds; balancing tasks no more than frequent—Mr. Morrell testified that the "office clerk" position would "still be available" at Plaintiff's RFC. (AR 352-353.) Mr. Morrell confirmed that his opinion stands even when Plaintiff's impairments restrict him to no more than four hours of standing but that office clerk positions would be unavailable if Plaintiff were fully sedentary. (AR 353-354.)

5

### b. The ALJ's Findings

The ALJ proceeded through the customary five-step sequential analysis. In the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 20, 2014. (AR 31.) Although Plaintiff works as a driver for people with disabilities, his earnings are too low to be considered substantial *gainful* activity.[2] (*Id.*) In the second and third steps, the ALJ found that although Plaintiff has a "severe medically determinable physical impairment" based on medical evidence in the record, Plaintiff did not meet the requirements of any listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. (AR 32.) The ALJ rejected two possible listings: 1.02 (major dysfunction of a joint) and 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint).[3] (*Id.*) 1.02 is defined as "gross anatomical deformity" and "chronic joint pain and stiffness" with "signs of limitation of motion," which in the case of knees, results in the "inability to ambulate effectively." (20 C.F.R. § 404(p), 1.02.) 1.03 is defined as a procedure that resulted in the inability to ambulate effectively, which did not abate within 12 months of onset. (*Id.* at 1.03.) In the fourth step, the ALJ found, relying on the vocational expert's testimony, that Plaintiff has the RFC to perform work as an office clerk and found that Plaintiff's position at Hertz qualified as past relevant work. (AR 33-35; DOT 209.526.010.) The ALJ noted that Plaintiff's RFC is to perform "less than the full range of light work," described as standing for no more than four hours, occasional climbing of ramps and stairs, stooping, crouching, crawling, and kneeling. (AR 33.) In coming to this decision, the ALJ also made an adverse credibility finding as to Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms" because he found them "inconsistent with the objective findings." (AR 34.) Based on these conclusions at the fourth step, the ALJ denied Plaintiff's application for benefits.

---

[2] Plaintiff earned $7,769 in 2014 and $12,504 in 2015, but the Social Security Administration's index lists $12,960 in 2014 and $13,080 in 2015 as the threshold earnings levels for substantial gainful activity. SOC. SEC. ADMIN., SUBSTANTIAL GAINFUL ACTIVITY (2019), *available at* https://www.ssa.gov/oact/cola/sga.html.

[3] Dr. Darius Ghazi testified—and the ALJ acknowledged that he considered—that Plaintiff may meet 1.03. (AR 325.) However, the ALJ gave Dr. Ghazi's opinion "no weight" because it was "obvious error," citing "Dr. Ghiza['s] [sic] [testimony] that he believed [Plaintiff] is able to walk up to six hours" yet cannot ambulate effectively because he cannot play sports. (AR 32.) The ALJ noted that this improperly equivocates inability to play sports and inability to "independently initiate, sustain or complete activities" as defined by the Social Security Act. (*Id.*)

### c. Appeals Council

On February 8, 2018, the Appeals Council denied Plaintiff's request for review because it "found that the reasons [Plaintiff disagreed with the ALJ's decision] do not provide a basis for changing" the ALJ's decision. (AR 5.)

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do her previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

## STANDARD OF REVIEW

The Court's review of the ALJ's decision is limited to an inquiry into whether there is substantial evidence to support the findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magalannes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("The Secretary's decision to deny benefits will be disturbed only if it is not supported by substantial evidence or it is based on legal error"). Substantial evidence is

"such relevant evidence as a reasonable mind might accept s adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting *Perales*, 402 U.S. at 401). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

In the Ninth Circuit, ALJ error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1122 (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008)).

**DISCUSSION**

The parties' cross-motions raise two issues: first, whether the ALJ properly made an adverse credibility finding; second, whether substantial evidence supports the ALJ's determination that Plaintiff can perform past relevant work. This order addresses each issue in turn.

**I.     The ALJ's Adverse Credibility Finding is Valid**

In evaluating the veracity of a claimant's subjective testimony, an ALJ may "consider all of a claimant's statements about symptoms including pain, but statements about pain or other symptoms will not alone establish claimant's disability." 20 C.F.R. § 404.1529(a). "Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ must then justify a lack of credibility with "clear and convincing reasons" by pointing to specific facts in the record that undermine claimant's complaints. *Molina*, 674 F.3d at 1112; *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) and *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)).

Here, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects" of symptoms were not consistent with medical evidence in the record. (AR 34.)

The ALJ cited two bases for discrediting Plaintiff's testimony. First, the ALJ found that Plaintiff's receipt of unemployment benefits "call[] into question his testimony alleging an inability to work during [the alleged disability period] because of his knee impairments." (*Id.*) Second, the ALJ found that Plaintiff's reported activities of daily living "are inconsistent with his alleged disabling knee impairments." (*Id.*)

### a. Plaintiff's Receipt of Unemployment Benefits

The ALJ found that Plaintiff's receipt of unemployment benefits undercut his assertions that he was unable to work because in applying for unemployment benefits, Plaintiff was required to make declarations as to his "being ready, willing, and *able* to work." (AR 34 (emphasis added).) Section 404.1529(a) provides that the Social Security Administration may "consider the claimant's efforts to work" in weighing credibility. 20 C.F.R. § 404.1529(a). In the Ninth Circuit, the ALJ may draw a negative inference from a claimant's "holding himself out as available for work" even though he has a right to apply for unemployment benefits. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (emphasizing importance of continued receipt of, not mere application for, unemployment benefits to support a finding of contradiction). Further, although it is possible that people may hold themselves as able to work because of financial hardship or "misconception regarding the extent of their own physical limitations" but be *actually unable* to work, Plaintiff has not argued that he is one of those "hypothetical people." *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). Here, Plaintiff's statement in his Exertion Questionnaire that he applied for and received unemployment insurance benefits until he started working at Hertz, which was during the claimed disability period, was a proper basis for the ALJ's adverse credibility determination.

### b. Plaintiff's Activities of Daily Living

However, the ALJ's finding that Plaintiff's admitted ability to "lift up to 50 pounds, sit without limitation, perform independent personal care, shop, and drive" was "inconsistent with his alleged disabling knee impairments" is not supported by substantial evidence. (AR 34.) In *Ghanim*, the Ninth Circuit restated the rule that "daily activities may…be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaging in pursuits

9

involving the performance of physical functions that are transferable to a work setting." *Ghanim*, 763 F.3d at 1165 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The court held that the claimant's "basic chores" were neither a "substantial portion" of his day nor "transferable" to a work environment. *Id.* at 1162, 1165; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (recognizing that "many home activities may not be easily transferable to a work environment").

Here, Plaintiff's daily chores and basic living activities of "cooking" and minimal "household chores" like cleaning the kitchen and washing dishes are not an indication of his work ability. (AR 340-343.) Defendant argues that the ALJ "correctly found" that the household chores, of which Plaintiff admitted being capable, were "not activities of a person with a totally disabling knee impairment incapable of light work." (Dkt. No. 19, 7.) However, this argument misses the point of the credibility inquiry. Plaintiff has not alleged that he is totally disabled; he only alleges that he has a disability that entitles him to benefits under the Social Security Act. *See Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits"). Moreover, even if these daily chores were relevant or transferable to a work environment, the record reflects significant limitations on those chores; for example, Plaintiff is unable to mop floors or do yard work. (AR 340-343.) There is not substantial evidence in the record for the ALJ to discredit Plaintiff on this basis alone.

In sum, although each basis does specify facts in the record that informed the ALJ's decision, only the ALJ's first reason for discrediting Plaintiff's testimony—that Plaintiff applied for and received unemployment benefits—is "clear and convincing." Because the ALJ relied on at least one valid basis for discrediting Plaintiff's testimony regarding the extent of his alleged disability, the ALJ's erroneous (second) inference regarding Plaintiff's daily activities makes no difference to the outcome of the case and is harmless. *See, e.g., Carmickle*, 533 F.3d at 1162 (analogizing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) and concluding "the ALJ erred in relying on one of several reasons…but such error…was harmless…because the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record").

## II. Substantial Evidence Does Not Support the ALJ's Fourth Step Determination

Plaintiff testified to two prior work experiences. The vocational expert classified Plaintiff's work at Hertz as an "office clerk" and Plaintiff's work at Staples as an "inventory clerk." (AR 332.) However, the ALJ only discussed the Hertz work, finding that Plaintiff's four months in the position met the "durational requirements to be considered as past [relevant] work" and that the Hertz position also met the "recency" and "earnings" requirements. (AR 35.) The ALJ then accepted the vocational expert's testimony that Plaintiff's RFC allowed him to perform work as an office clerk as it is generally performed in the national economy, which requires "no more than four hours of standing [or] walking." (*Id.*) Given Plaintiff's RFC to perform his past relevant work, the ALJ concluded that Plaintiff "has not been under a disability" and thus does not qualify for benefits. (AR 35-36.)

Plaintiff insists that the ALJ erred in finding that he had the RFC to perform light work such that he could perform his prior work at Hertz as an office clerk. (AR 33-36.) Plaintiff contends that his work as an office clerk was not substantial gainful activity, and therefore not past relevant work, because he was terminated in less than four months for poor performance. (Dkt. No. 15.)

At the fourth step, an ALJ may only consider work as "past relevant work" if it (1) was performed by claimant or generally performed in the national economy within the last 15 years or 15 years prior to the date that the disability was established; (2) lasted "long enough for [claimant] to learn to do it"; and (3) was substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 416.965. Substantial gainful activity is work "done for pay or profit that involves significant mental or physical activities," where earnings can be a "presumptive, but not conclusive" sign of whether a job is substantial gainful activity. 20 C.F.R. § 494.1574(b)(3); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). RFC for the past relevant work analysis is defined as "the most [the claimant] can still do despite [their] limitations," based on all relevant evidence in the record and all impairments. 20 C.F.R. § 404.1545(a). The sole issue here is whether Plaintiff's work for Hertz meets the durational requirement for past relevant work.

As discussed below, although substantial evidence supports the ALJ's finding regarding

Plaintiff's RFC, substantial evidence does not support the ALJ's finding that Plaintiff's work at Hertz qualifies as past relevant work.

### a. The ALJ Did Not Err in the RFC Determination

The ALJ found that Plaintiff's RFC included "some light work," with the ability to stand for up to four hours and to occasionally climb ramps and stairs but never to climb ladders, ropes, or scaffolds. (AR 33.) There is substantial evidence in the record to support this finding. Dr. Test—Plaintiff's treating physician who performed both his knee replacements—concluded that Plaintiff could lift no more than 50 pounds and walk and stand up to four hours per day, but that he could not climb ladders, squat, or kneel. (AR 254.) The ALJ gave great weight to Dr. Test's opinion and assigned an RFC consistent with his findings.[4] (AR 35); *see also Ghanim*, 763 F.3d at 1160 (noting that opinions of treating physicians outweigh opinions of examining physicians).

### b. The ALJ Erred in the Past Relevant Work Determination

The ALJ found that Plaintiff's less than four months of work for Hertz satisfied the requirements for past relevant work. (AR 35.) However, the ALJ's decision does not address a critical component of the past relevant work analysis: that the work lasted "long enough for [Plaintiff] to learn to do it." 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.965. In fact, the ALJ stopped cross-examination by Plaintiff's attorney regarding whether the vocational expert believed Plaintiff had worked for a long enough time at Hertz to learn how to do the job; instead, the ALJ said it was a legal question and that he would "analyze it in his opinion." (AR 134).) His opinion, however, never addressed whether the work lasted long enough for Plaintiff to learn to do it. Instead, without explanation, the ALJ found that four months satisfied the durational requirement. (*Id.*) The ALJ's opinion also failed to acknowledge that Plaintiff testified that he was terminated from the Hertz position because of his unfamiliarity and issues using computers and because he

---

[4] Dr. Salamacha's medical examination notes that Plaintiff may "stand and walk for up to six hours in an eight-hour workday in one-hour intervals, with five minutes rest between intervals," which is a higher level of capability than found by the ALJ. (AR 284.) Because a finding of six hours' capability rather than four would only be to Plaintiff's detriment, the ALJ's interpretation of the medical evidence for RFC is supported by substantial evidence at best and harmless error at worst.

12

was "unable to perform the required duties in the time allowed…forgot to deposit a check and…sent some paperwork to the wrong company." (AR 333, 345.)

"The decision as to whether the claimant retains the functional capacity to perform past work…has far-reaching implications and *must be developed and explained fully in the disability decision.* Since this is an important and…a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." (SSR 82-62, 1982 WL 31386 (emphasis added).) In *Valencia*, the court found that the ALJ could "properly rely on the vocational expert's testimony and the DOT to support his conclusion that plaintiff could do his past relevant work as generally performed" even if the ALJ did not consider fully whether Plaintiff *specifically* could perform the work. *Valencia v. Berryhill*, 2017 WL 4168569 (N.D. Cal. 2017). Here, however, the ALJ considered neither Plaintiff's specific situation nor the length of time after which an office clerk job can be learned in general. At the vocational expert's only opportunity to testify, the ALJ did not ask him about how long it might take for someone to learn how to do the job of an office clerk. (AR 350-354.) Instead, the vocational expert confirmed that the office clerk position as generally performed in the national economy includes "occasional usage of the computer," with which Plaintiff testified having difficulty learning. (AR 353.) Further, the ALJ denied Plaintiff the opportunity to ask the vocational expert about whether he believed, based on the record, that Plaintiff had "performed the car sales clerk job" long enough to learn how to do the job. (AR 354.) With only Plaintiff's testimony regarding his difficulty in learning to use computers on the job at Hertz, substantial evidence does not support the ALJ's finding that the durational requirement for past relevant work was met.

In discussing the relevance of Plaintiff's difficulty with computers, Plaintiff also raises a related argument about the separate requirement that past relevant work be substantial gainful activity relying on *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). Plaintiff argues that as in *Lewis*, his termination from Hertz for difficulty using computers shows that "the job had not been substantial gainful activity." (Dkt. No. 15, 8-9 (citing *Lewis*, 236 F.3d at 515).) There are two reasons that the analysis in *Lewis* does not apply here. First, *Lewis* only established that a short period of time working, not evidence of a poor job done, would "weigh against a finding that the

13

claimant had engaged in substantial gainful activity." *See Lewis*, 236 F.3d at 516. The court noted that the claimant was "criticized for his work performance," but this played no role in the court's conclusion. *Id.* Second, *Lewis* had a different evidentiary posture. There, the ALJ found substantial gainful activity notwithstanding a presumption against it due to low earnings. *Id.* Here, Plaintiff argues that the ALJ should find a *lack* of substantial gainful activity notwithstanding a presumption *supporting* it; Plaintiff's earnings exceed the amounts[5] specified by 20 C.F.R. § 404.1574(b)(2)(ii). *See id.; Keys v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). The inquiry at issue missing from the ALJ's decision here is the durational requirement, not whether the work was substantial gainful activity, and for the reasons stated above the reasoning in *Lewis* is neither relevant nor analogous.

The ALJ's failure to consider duration as it relates to Plaintiff's learning—or even a similar person's typical learning—in his job at Hertz cannot be considered harmless error because the error is neither nonprejudicial nor inconsequential to the ultimate disability determination. *See Molina*, 674 F.3d at 1122 (holding that an error is harmless if it is "inconsequential to the ultimate nondisability determination"). Plaintiff's work at Hertz was the only prior job on which the ALJ based his conclusion at step four that Plaintiff's RFC does not preclude "past relevant work." (AR 35 ("The undersigned…finds that the claimant is capable of performing his past relevant work as an office clerk")); *cf. Carter v. Comm'r of Soc. Sec. Admin.*, 2013 WL 5525884 (D. Md. 2013) (finding harmless error for an ALJ's failure to consider duration in terms of the claimant's learning in one job where the ALJ found additional jobs that met the requirements for past relevant work).[6] Because the duration finding was not supported by substantial evidence and was outcome-determinative in that the ALJ denied Plaintiff benefits at the fourth step, the ALJ's finding is not harmless error.

---

[5] Plaintiff earned $13.00 an hour at Hertz and worked 40 hours per week between October 2013 and February 2014. (AR 203.) His monthly earnings were thus approximately $3,120. The Social Security Administration's index lists monthly earnings above $1,040 in 2013 and $1,070 in 2014 as presumptively substantial gainful activity for non-blind claimants. SOC. SEC. ADMIN., SUBSTANTIAL GAINFUL ACTIVITY (2019), *available at* https://www.ssa.gov/oact/cola/sga.html.
[6] The ALJ did find that both the Hertz position ("office clerk") and the Staples position ("inventory clerk") qualified as past relevant work, but he also found that Plaintiff was only capable of performing past relevant work as an office clerk. (AR 35.)

14

### III. The Scope of Remand

Because the Court finds that the past relevant work against which RFC was measured was improperly identified, the Court vacates the ALJ's decision and remands for future proceedings consistent with this opinion. The ALJ did not analyze—and did not permit Plaintiff to question the vocational expert at the hearing about—the duration requirement beyond a cursory mention of the four months listed in Plaintiff's employment history, and thus the record must be further developed.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART Plaintiff's Motion for Summary Judgment (Dkt. No. 15), DENIES Defendant's Cross-Motion for Summary Judgment (Dkt. No. 19), and REMANDS for further proceedings.

**IT IS SO ORDERED.**

Dated: February 19, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge